

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TARA MORIARTY,                                    )
                                                  )
                Plaintiff,                        )
        v.                                        )      Civil Case No.: 3:10CV035
                                                  )
LIBERTY FIRST RISK RETENTION                      )
GROUP INSURANCE COMPANY,                          )
                                                  )
                Defendant.                        )
                                                  )
_____             )


## COMPLAINT

Plaintiff Tara Moriarty alleges as follows:


### INTRODUCTION

1.      James Harrell Jr. hit and badly injured Moriarty on Hull Street Road in Chesterfield County with a truck leased to Gilco Trucking Company. Liberty First Risk Retention Group Insurance Company sold liability insurance to Gilco. When Moriarty sued Harrell and Gilco for her injuries, Liberty initially claimed that neither Harrell nor the Gilco truck that hurt Moriarty were covered by its policy. It later changed that position, withdrew its denial, and agreed in writing that "one million liability coverage limit applies in this case." Several months later, on November 18, 2009, a Richmond City Circuit Court jury awarded Moriarty $600,000 in damages against Gilco and Harrell. That judgment is now final. More than one month after the verdict, Liberty denied coverage for that final judgment. As grounds, it once again reversed itself and asserted that the Gilco truck was not covered under the Gilco policy.

2.    The Liberty policy had a MCS-90 endorsement.   Its terms are set forth verbatim in 49 CFR 381.15.  Those terms contractually require Liberty to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy. . . .*" (Emphasis supplied.)  Under 49 CFR 387.9, that endorsement had to provide at least $750,000 in liability protection.  That endorsement also expressly allows Moriarty to recover her final judgment directly from Liberty.

3.    Moreover, even if Liberty had not agreed to pay under the MCS-90 endorsement, Virginia Code § 38.2-226 bars it from raising against Moriarty any alleged failure by Gilco to comply with the policy's condition that Gilco submit the truck in the accident for coverage.

4.    Further, even if Virginia Code § 38.2-2226 did not apply here, Liberty has waived under the common law the only reason it has raised for its refusal to pay Moriarty's judgment against Gilco, and it is also estopped from relying on that reason.

## PARTIES

5.    Moriarty resides in Virginia.

6.    On information and belief, Liberty is organized under the laws of Utah, with its principal place of business in Utah, and it is approved to sell insurance in Virginia.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in dispute exceeds $75,000, excluding interest and costs.

8.     Venue is proper in this district and division under 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to this suit happened within this district and division.

## THE ACCIDENT AND UNDERLYING JUDGMENT

9.     On or about July 3, 2007, Harrell hit and badly hurt Moriarty while driving the Gilco truck on Hull Street Road in Chesterfield County, Virginia. After running into her car, the Gilco truck pushed it sideways down the road for some time before it stopped.

10.     Moriarty tried her case to a Richmond City Circuit Court jury. That jury awarded her $600,000 in damages on November 18, 2009. No party appealed, so her judgment is now final.

## FIRST LIBERTY CONTRACTED TO PAY MORIARTY ON HER FINAL JUDGMENT AGAINST GILCO

11.     Liberty agreed to provide liability insurance to named insured "Gilco Trucking Company, Inc" through policy T060003-10 (the "Policy") for the policy period July 1, 2007 to July 31, 2007.

12.     The policy included an MCS-90 endorsement.

13.    As required by 49 CFR 387.1, that endorsement as attached to the Policy provided:

> . . .

>> *Accident* includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected or intended.

>> *Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

>> *Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

>> *Public Liability* means liability for bodily injury, property damage, and environmental restoration.

> . . .

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

> It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

4

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

14.     That endorsement as attached to the Policy was required to provide "limits of liability" of at least $750,000, and, on information and belief, it provided such limits.

15.     Both Gilco and its truck in the accident are "subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 . . . " as set forth in the Policy's MCS-90 endorsement.

## LIBERTY FAILED TO PROPERLY NOTIFY MORIARTY OF THE ONLY REASON IT REFUSED TO PAY HER JUDGMENT

16.     In a letter dated August 6, 2007 to Moriarty's counsel, Liberty asserted "there is no coverage afforded under the [Liberty] policy for [Moriarty's] claim."

17.     That letter cites policy terms that purportedly required Gilco to submit at the end of each month all autos used in its business for the prior month, in order for those autos to be covered by the Policy for that prior month.

18.     That letter asserts that "neither the driver James Harrell nor his vehicle had been added to the Gilco Trucking Company Liability policy at the time the accident occurred."

19.     That denial letter did not purport to reserve any other rights. Nor does it provide any notice that Liberty had reserved any other rights.

20.     Liberty sent Moriarty's counsel a letter dated April 28, [2009]. It said:

> Following a recent review of the above incident with our insured a discrepancy on the report was discovered. Mr. Harrell and the vehicle he was driving were added in a timely manner to the monthly report of scheduled vehicles and drivers.

This is to advise you that we have reopened the above referenced claim and the one million liability coverage limit applies to this case.

21.     That April 28 letter did not purport to reserve any rights. Nor did it provide any notice that Liberty had reserved any other rights.

22.     Liberty sent Moriarty's counsel a letter dated December 28, 2009, more than one month after the verdict against Gilco. It returned to the same position first raised in its August 6, 2007 letter and then withdrawn and reversed in its April 28, 2009 letter: "Mr. James Harrell and his vehicle were not added to the July 2007 report nor was a premium paid in the monthly payment for July 2007." It has refused to pay Moriarty's final judgment.

23.     That December 28, 2009 letter also claimed that Liberty was "reserving all [its] rights under the policy." It made no similar statement in its prior two letters to Moriarty.

24.     Virginia Code § 38.2-2226 requires carriers to notify claimants of any breach of policy conditions within 45 days of discovering that breach.

25.     Liberty's sole reason for refusing to pay Moriarty's judgment is Gilco's alleged failure to include the truck Harrell drove in Gilco's end-of-month report, as Liberty contends is a Policy condition.

26.     To the extent Liberty's August 6, 2007 letter constitutes the required notice for the supposed coverage problem, Liberty expressly withdrew that letter and its notice. Liberty provided no other notice within the § 38.2-2226 deadlines for the sole ground on which it refuses to pay Moriarty's final judgment against Gilco.

## LIBERTY WAIVED OR IS ESTOPPED FROM RELYING ON ITS ONLY ASSERTED DEFENSE TO PAYMENT

27.    Even absent § 38.2-2226, Liberty waived its right to raise that "neither the driver James Harrell nor his vehicle had been added to the Gilco Trucking Company Liability policy at the time the accident occurred. . . " as a grounds for refusing to pay any final judgment against Gilco.

28.    Liberty intentionally relinquished any such right in its April 28, 2009 letter. And it made no effort to again reverse its position until after Moriarty secured a judgment and that judgment became final.

29.    In the alternative, Moriarty reasonably relied, to her detriment, on Liberty's statements regarding its coverage position in that April 28, 2009 letter in devoting significant time and resources to pursuing her claim against Gilco and Harrell through trial. To the extent she is somehow not entitled to payment under the Policy or otherwise, Liberty is estopped from changing its position and refusing to pay her.

## COUNT I
## BREACH OF CONTRACT

30.    Moriarty's final judgment against Gilco is a "final judgment recovered against [Gilco] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980." And Liberty has agreed to pay such final judgments.

31.    Liberty agreed in the Policy that "[Moriarty] may maintain an action in any court of competent jurisdiction against the company to compel . . . payment . . ." of any such final judgment.

32.     So Liberty expressly contracted to directly pay third-party Moriarty for her final judgment against its insured Gilco.

33.     Liberty has breached that duty by failing to pay Moriarty's final judgment.

34.     Moreover, Liberty has waived – and is estopped from relying on – the only reason it has raised for refusing to pay that judgment.

35.     Moriarty has been damaged as a direct and proximate result of Liberty's Policy breach.

## PRAYER FOR RELIEF

Moriarty therefore asks that this Court award her:

1)     Damages of $600,000;

2)     Interest at 6% on the state court judgment from its entry;

3)     Costs; and

5)     Such other relief as it deems proper.


## JURY DEMAND

Moriarty demands a trial by jury on all issues so triable.

Respectfully submitted,

TARA MORIARTY

John J. Rasmussen

Virginia State Bar No. 45787
Attorney for Tara Moriarty
INSURANCE RECOVERY LAW GROUP, PLC
PO Box 8049
Richmond, Virginia 23223-0049
Telephone:     (804) 308-1359
Facsimile:     (804) 308-1349
E-mail:        jjr@insurance-recovery.com

Trent S. Kerns
Virginia State Bar. No. 24152
Attorney for Tara Moriarty
ALLEN ALLEN ALLEN AND ALLEN
6123 Harbourside Centre Loop
Midlothian, Virginia 23112
Telephone:    (804) 745-1200
Facsimile:    (804) 745-8997
E-mail:    Trent.Kerns@AllenandAllen.com